# Melissa Harvey, Appellant, *v.* John Knapp.

*Deed—Rescission—Fraud—Stock.*

A deed for land executed in consideration of the stock of a corporation will not be rescinded where it appears that the defendant represented that a situation in the corporation would afford favorable employment to plaintiff's husband, and that the holding of the stock would increase his chances of getting such position, but that he made no misrepresentation of any existing fact, nor gave any promise to procure a situation for plaintiff's husband.

A deed given in exchange for stock of a corporation will not be rescinded on the ground that the defendant wrongfully stated that he had paid a certain amount per share for the stock, where the evidence shows that he had received the stock in exchange for an interest in a limited partnership association, and there is no evidence to show how much money he had put into the original limited company.

Argued Nov. 3, 1899. Appeal, No. 64, Oct. T., 1899, by plaintiff, from decree of C. P. No. 2, Allegheny Co., Oct. T., 1898, No. 372, dismissing bill in equity. Before Sterrett, C. J., Green, McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Bill in equity to rescind a deed.

Shafer, J., filed the following opinion:

The bill is for the rescission of a deed of conveyance of land on the ground of fraud in the sale.

### FINDINGS OF FACT.

1. Before 1891, John Knapp, the defendant, was a member of a limited partnership called the Thompson Glass Company, Limited, which had a plant in Fayette county. He was also one of a number of shareholders in this company who were indorsers on a note for $25,000, made by the limited company.

2. In 1891, the plant of the company was sold by the sheriff of Fayette county on an execution and bought by Thomas Miller, in trust for the indorsers of this note.

3. In July, 1892, a charter was obtained by the Thompson Glass Company providing for a capital stock of $10,000, one tenth of which was paid in cash. Shortly afterwards the cap-

ital stock was increased to $80,000, and the stock paid up by conveying the property so purchased at sheriff's sale to the company for $79,000. John Knapp received as his proportion thereof ninety-two shares of the par value of $50.00 each. The glass works were operated by the corporation, a Mr. Clark, a son-in-law of defendant, being secretary and manager, and a Mr. Zimmers, the defendant's brother-in-law, being treasurer of the company and factory manager.

4. The corporation made a mortgage of its plant to a trustee to secure bonds for $40,000, and the plaintiff (defendant) became the owner of one bond for $500, and afterwards joined with other stockholders who were holders of bonds in postponing the lien of their bonds to that of certain other parties in Uniontown.

5. In 1893, the plaintiff, a married woman, the wife of William L. Harvey, was the owner of the lot of land in the borough of Beltzhoover, Allegheny county, described in the first paragraph of the bill, which was worth about $6,000, and on which there was a mortgage for $2,000.

6. In the winter or spring of 1894, William L. Harvey came to the defendant, who lived in the neighborhood, and proposed the sale or exchange of this property to defendant for stock in the glass company, and urged the same upon him. The defendant finally offered to trade eighty shares of his stock for the property, telling Harvey to go to Uniontown to look into the property, and referring him to four or five of the directors of the company, all of whom lived on the South Side, Pittsburg, and were more or less known to Harvey. Harvey was out of employment and anxious to get a situation with the glass company. He and Knapp had some talk about his getting such a situation, and Harvey being told by one of the directors that he had heard that Knapp had agreed to get him a situation, and that Knapp could not do that, went to Knapp and told him what this director had said; whereupon Knapp and Harvey went to Thomas Miller, president of the company, who told Harvey that there was no position then open, but that if he, Harvey, became a stockholder, it would no doubt increase his chances of getting such a position.

7. After the sale had been practically agreed upon between Knapp and Harvey, Knapp went to see Mrs. Harvey, where

the matter was talked over.  The substance of Mrs. Harvey's testimony in regard to the conversation between herself and the defendant is that he spoke of how well his brother-in-law, Mr. Zimmers, and the son-in-law, Mr. Clark, who were employed in the business, had done, and that the stock would be a good investment for her, and that he and his wife liked the place; that he had paid cash for his stock, and that it was worth every cent of it; and he also told her " how nice it would be that Mr. Harvey could get a position as good as his son-in-law had, and he said they needed a good salesman up there, and that Mr. Harvey would have a good, permanent position also." Mr. Harvey, who was present at this interview, testifies that Knapp said that he had bought this stock and paid cash for it, and that it was worth every dollar he had invested in it, namely, $4,000, $50.00 a share, and that it was not paying a dividend just at the time being, but that it was perfectly safe and " you have a good thing, at any rate.  You can be placed as well there as my son-in-law."

8. The defendant was called as for cross-examination by the plaintiff and gave some testimony.  He was in ill health, was quite deaf, considerably advanced in years, and very evidently not in a mental condition to give coherent testimony, or to understand very well the questions put to him.  His counsel did not attempt to put him on the stand on his own behalf, and in our opinion was justified in not doing so.

9. Aside from the effect of the responsive answer of defendant, we are unable to find from the evidence that the defendant agreed as a part of the consideration for the exchange that he would procure a situation for the husband of the plaintiff, or make any representations to her concerning any alleged existing facts which were untrue, unless it might be in regard to the amount paid by him for the stock.  The bill alleges that he said he had paid $50.00 a share for the stock, and the answer is to the same effect.  It appears by the evidence that the defendant paid at the time of the sheriff's sale about $2,200 or $2,300, and by the payment of this amount became the owner of a share in the property sold to Miller in trust, and with that share he paid up his stock.  How much money he put into the original limited company does not appear in the evidence.  We are, therefore, unable to say that the answer of the defendant in this respect has been shown to be untrue.

10. William L. Harvey, the husband of plaintiff, did not at any time obtain a position with the Thompson Glass Company, and in the spring of 1895 the glass company failed, and its property was sold at sheriff's sale.

11. In January, 1896, the plaintiff gave notice to the defendant that she would rescind the contract on the ground of fraud, and demanded the reconveyance of the land, offering to return the stock to him and pay the mortgage, or so much of it as he had already paid; and the bill herein was filed August 31, 1898.

### CONCLUSIONS OF LAW.

If the above findings of fact are correct the plaintiff of course has no right to have the contract in question rescinded and the property reconveyed to her.

Let the bill be dismissed, the costs to be paid by plaintiff.

*Error assigned* was decree dismissing bill.

*W. G. Guiler*, with him *J. M. Shields* and *J. D. Watson*, for appellant.—The rule is well settled that what an agent says while acting in the scope of his authority is admissible as part of the res gestæ, but not statements or representations made by him at any other time: Penna. R. Co. v. Books, 57 Pa. 343.

Plaintiff had a right to rescind the contract whether John Knapp knew or not that the representations made by him were false: Braunschweiger v. Waits, 179 Pa. 47 ; Edelman v. Latshaw, 180 Pa. 419.

*J. Boyd Duff*, with him *E. A. Lawrence*, for appellee.—It is well settled that, until plaintiff has established that the exchange was made by means of false representations, false in fact, and made frequently or wilfully and recklessly by the defendant, plaintiff has no right of action. It is first in order before any other proof can be considered : Davis v. Stuard, 99 Pa. 295.

In addition, the evidence of the fraud must be clear, precise and indubitable, and so well established as to leave no room for hesitation or doubt in the mind of the chancellor : Jones v. Lewis, 148 Pa. 234; Phillips v. Meily, 106 Pa. 536 ; Sylvius v. Kosek, 117 Pa. 76 ; Lynch's App., 97 Pa. 349.

That this exchange became a hardship or was an improvident bargain upon plaintiff is not sufficient: Kern v. Simpson, 126 Pa. 42; Kern v. Middleton, 24 W. N. C. 393.

Nor can the defendant, who is only a stockholder in the corporation, the glass company, be visited with any intimate or detailed knowledge of the company's affairs sufficient to establish any status of confidence or trust as between him and the plaintiff or her husband in this action: Krumbharr v. Griffiths, 151 Pa. 223; Bidwell v. Pittsburg, etc., Pass. Ry. Co., 114 Pa. 535.

PER CURIAM, December 30, 1899:

This appeal by the plaintiff is from the decree dismissing her bill wherein, among other things, she prayed for the cancelation of her conveyance to the defendant on the ground of his alleged fraud in the procurement of the same, etc.

The facts upon which the decree is based are fully set forth in the opinion of the learned trial judge, including his answers to requests for findings of fact submitted by both parties respectively, and need not be recited here. A careful consideration of the record has satisfied us that his findings are fully sustained by the pleadings and the evidence. His conclusions of law are also correct. We find no error that would justify a reversal or modification of the decree, nor is there anything in either of the specifications of error that requires discussion.

The decree is affirmed on the opinion of the court below and the appeal is dismissed at appellant's costs.